STATE of Wisconsin, Plaintiff-Appellant-Petitioner,

v.

Richard James TURNER, Defendant-Respondent
and Cross-Petitioner.

Supreme Court

*No. 85–0215–CR. Argued October 1, 1986.—Decided March 9, 1987.*

(Also reported in 401 N.W.2d 827.)

For the plaintiff-appellant-petitioner the cause was argued by *Stephen W. Kleinmaier*, assistant attorney general, with whom on the briefs was *Bronson C. La Follette*, attorney general.

For the defendant-respondent and cross-petitioner there were briefs and oral argument by *James Bolgert*, Sheboygan.

LOUIS J. CECI, J. This is a review of an unpublished decision of the court of appeals which was entered on October 23, 1985. The state and the defendant both seek review of separate portions of the appeals court's decision. The relevant facts are set out below.

## FACTS

On Sunday, June 24, 1984, an armed robbery and stabbing occurred at the Greyhound bus depot in

Sheboygan, Wisconsin. The stabbing victim, Jeffrey A. Koenigs, twice singled out defendant Richard J. Turner from a photo array, stating that he bore some resemblance to the assailant. Subsequently, between 8:30 a.m. and 9:00 a.m. on Wednesday, June 27, detectives Dennis Korff and James H. Hoppe arrested the defendant on a probation hold. In response to defendant's initial inquiry as to the reason for his arrest, he was told by police that his name had come up in an investigation and that they would discuss it at police headquarters.

En route to the police station, the defendant indicated that he wanted his attorney, William Moir, and his probation officer, Wolfgang Schrauth, present before he was questioned. The defendant was not advised of his *Miranda* rights at this time; however, he was also not asked any questions.

The defendant arrived at police headquarters at approximately 9:30 a.m. The police then telephoned Schrauth and informed him that the defendant was at police headquarters and had requested that he be present at any questioning. The defendant was placed in an interrogation room where he was given his *Miranda* rights, orally and in written form. The defendant signed the Sheboygan Police Department's standard *Miranda* warning and waiver form. The defendant again requested that his attorney be present.

The defendant then unsuccessfully attempted to contact Attorney Moir by telephone. After defendant learned that Moir was unavailable, detective Korff handed him the telephone book, opened to the attorney listings in the yellow pages, and gave him the opportunity to contact other attorneys. The defendant declined and instead said he would talk to the police

without his attorney present, but that he still wished to have Schrauth present. Detective Korff informed the defendant that Schrauth had been contacted and was en route to headquarters. While Korff remained in the room with the defendant, detective Hoppe left the room to check whether Schrauth had arrived. After several minutes of silence, the defendant said, "Come on, Korff, ask me questions you want to ask." Korff replied that they would wait until Schrauth arrived and left the room to check on the whereabouts of Schrauth.

Detectives Korff and Hoppe then returned to the interrogation room with Schrauth and advised the defendant that he was a suspect in the incident at the Greyhound bus depot. After approximately forty-five minutes of questioning, during which the defendant denied involvement in the crimes, the detectives left the room to allow Schrauth and the defendant to privately confer. The two spoke alone for about 20 to 30 minutes. At approximately 12:30 p.m., the defendant stated he did not want to answer any more questions. Police terminated the questioning. During the interview, the defendant was permitted to use the bathroom on several occasions and was also permitted to phone his wife. He tried to reach her several times, and on or about the third attempt he was able to reach her and have a brief conversation with her.

After the interview was terminated, the detectives asked the defendant for his consent to search his room at the halfway house where he was residing. The defendant signed the consent to search form. The defendant and Korff and Hoppe went to the halfway house, where a search of the defendant's room commenced at 1:27 p.m. and was completed at 1:49 p.m. Several items were seized.

The defendant was then transported to the Sheboygan county jail where he was booked on a probation hold. At the request of the detectives, the defendant was segregated from the general population, and his telephone calls were restricted to his family, attorney, and probation officer. Police testified that they segregated defendant from the general prison population in order to allow the police to investigate the defendant's statement about his activities over the weekend without affording the defendant the opportunity to contact potential alibi witnesses.

The following morning, Thursday, June 28, detective Hoppe went to Milwaukee to display pictures to Kelly Mittelstadt, a witness to the incident at the Greyhound depot. Even though she stated that she could not positively identify defendant, she had paused at a picture of the defendant when looking at the photo array. Mittelstadt could not positively identify anyone from the pictures, but she stated that she thought she could identify the assailant from a lineup.

At approximately 1:45 p.m. on June 28, detectives Korff and Hoppe again met with the defendant. They again advised him of his *Miranda* rights, orally and in writing, and the defendant again signed the waiver form. At this time he did not renew his request for counsel nor did he indicate in any manner that he would not talk to the officers. During the initial stage of the interview, the defendant again denied committing the crimes. However, after being confronted by officers with inconsistencies in his statements, the defendant broke down, started to cry, and said, "I did it." The admission came at 4:14 p.m. The defendant then proceeded to recount his activities over the weekend and describe the robbery. During the inter-

view, the defendant was permitted to phone his wife. The interview was adjourned at 5:50 p.m. to allow the defendant to eat supper.

At 6:10 p.m., detectives Hoppe and Ralph Marcheske drove defendant to his room at the halfway house to get some clothing. From there, the defendant and the detectives went to the Greyhound bus depot, where the defendant "walked through" his activities on June 24.

The defendant was then returned to the police station, where he was again advised of his *Miranda* rights. Again, he signed a waiver form. Defendant was questioned between 6:47 p.m. and 8:50 p.m. Detective Hoppe reviewed defendant's oral statement with him, and then detective Marcheske and the defendant prepared a written statement. After Marcheske finished typing the statement, he read the statement to the defendant. Marcheske intentionally made some typographical errors to ensure that the defendant read the statement and to be sure the statement accurately reflected the substance of defendant's confession. During the reading, the defendant initialed some corrections and reread the statement himself.

While the written statement was being prepared, the defendant asked to phone his wife. At approximately 7:20 p.m., Marcheske gave the defendant the telephone and left the room. The defendant was left alone for approximately ten minutes to make the call. When Marcheske returned, he orally advised the defendant of his *Miranda* rights before further proceeding with the statement.

Approximately five minutes after the defendant signed the written statement, he repudiated it, stating he had fabricated the story to get the detectives "off

his back." A short time later, however, he admitted that the statement was true.

The defendant was returned to the Sheboygan county jail, where he was charged with armed robbery, contrary to sec. 943.32(1)(b) and (2), Stats., and attempted first-degree murder, contrary to secs. 939.32 and 940.01(1).

On June 29, after defendant had been formally charged, a public defender intake worker interviewed Turner and determined that he was entitled to representation by a public defender. The intake worker acted on his own initiative in interviewing defendant; Turner had not requested the interview, nor did he seek the aid of an attorney from the public defender's office. The public defender's office then appointed Attorney James Bolgert, who met with the defendant for the first time at 11:25 a.m. on Friday, June 29, more than fifty hours after the defendant had first requested that his personal attorney be present during any questioning.

## ISSUES

The issues that must be addressed by this court are as follows:

(1) Did the court of appeals err in reversing the trial court on the question of whether the police honored the defendant's right to counsel and in determining that the defendant initiated conversations with the police during the police interrogation which occurred on June 27, 1984, thereby waiving his right to counsel?

(2) Did the appeals court err in affirming the trial court's holding that Turner's right to remain silent was not scrupulously honored on June 27 so as

to render his consent to a search of his quarters at the halfway house invalid, thereby justifying the suppression of the evidence seized during that search?

(3) Did the appeals court err in holding that the police failed to scrupulously honor Turner's right to remain silent when they reinterrogated him on June 28, the second day that he was in police custody?

(4) Finally, did the appeals court err in reversing the trial court's decision that inculpatory statements made by the defendant during the second day of interrogation ought to be suppressed due to involuntariness?

## TRIAL COURT DISPOSITION

At the hearing on the defendant's motion to suppress, Circuit Judge Daniel P. Anderson ordered the following: (1) that both written and oral statements made by the defendant on June 27 and 28 be suppressed because they were obtained in violation of his constitutional right to counsel and right to silence, (2) that these same statements be suppressed because they were not voluntarily given, and (3) that the items seized during the search of Turner's living quarters be suppressed because defendant's consent to search was not voluntarily given.

## APPEALS COURT DISPOSITION

The state appealed from the order of the trial court. The appeals court first reversed the trial court on the issue of whether defendant waived his right to have counsel present. However, it affirmed the trial court's decision that defendant's right to silence had not been scrupulously honored during the June 28 interrogation and, therefore, held that the June 28

statements were properly suppressed. It further extended that holding of the trial court to the consent to search given by the defendant on June 27, finding that it, too, had been obtained in violation of defendant's right to silence. Finally, it reversed the trial court on the issue of the voluntariness of defendant's statement made on June 28 and the voluntariness of the consent to search given on June 27.

Because of the appeals court's determination that defendant's right to counsel had been waived, the consent to search given after invocation of the right to counsel was not invalidated. However, the appeals court determined that the items seized during the search were properly suppressed because the request for consent to search was made in violation of defendant's right to remain silent.

On appeal to this court, the state seeks review of that portion of the decision of the court of appeals that suppressed both the statements made by the defendant and the evidence seized from his living quarters. Defendant, in his cross-petition, seeks review of that portion of the court of appeals decision which reversed the trial court's findings that defendant's right to counsel had been violated and that his statements made on June 28 were involuntary.

## STANDARD OF REVIEW

The standard of review which we must utilize may vary and depends upon the circumstances. In general, we are bound not to upset the trial court's findings of historical or evidentiary fact unless they are contrary to the great weight and clear preponderance of the evidence. This is basically a "clearly

erroneous" standard of review. *State v. Woods*, 117 Wis. 2d 701, 715, 345 N.W.2d 457 (1984). Questions of law require independent appellate review, *State v. Lee*, 122 Wis. 2d 266, 274, 362 N.W.2d 149 (1985), while questions of constitutional fact are also subject to independent review and require an independent application of the constitutional principles involved to the facts as found by the trial court. *Id.; Woods*, 117 Wis. 2d at 715; *State v. Mazur*, 90 Wis. 2d 293, 309, 280 N.W.2d 194 (1979). The reviewing court has the duty to apply constitutional principles to the facts as found in order to ensure that the scope of constitutional protections does not vary from case to case. *Woods*, 117 Wis. 2d at 715.

As such, we are permitted to independently determine from the facts as found by the trial court whether any time-honored constitutional principles were offended in this case. This is true whether we are examining the voluntariness of defendant's consent to search or whether we are deciding if defendant's confession was voluntarily procured. *See, Miller v. Fenton*, — U.S. —, —, 106 S. Ct. 445, 450 (1985), *Woods*, 117 Wis. 2d at 715. Independent appellate review is also required in determining whether the defendant's right to silence has been scrupulously honored since that inquiry requires an application of constitutional principles to the facts as found. *State v. Hartwig*, 123 Wis. 2d 278, 284, 366 N.W.2d 866 (1985).

## I. DEFENDANT'S RIGHT TO COUNSEL

The first issue we must address deals with defendant's constitutionally protected right to counsel and with whether that right was violated by the police

when they questioned him on June 27 after he had twice invoked his right to counsel.

The trial court held that defendant's right to counsel had been violated. In reaching this decision, Judge Anderson relied on the constitutional guarantees articulated in *Miranda v. Arizona,* 384 U.S. 436 (1966). *Miranda* states that once a criminal defendant invokes his or her right to counsel, all interrogation must cease until an attorney is present. *Id.* at 471. The trial court further relied on the decisions of this court in *Wentela v. State,* 95 Wis. 2d 283, 290 N.W.2d 313 (1980); and *Leach v. State,* 83 Wis. 2d 199, 265 N.W.2d 495 (1978), which, in turn, both heavily rely upon the five-factor test adopted by the United States Supreme Court in *Michigan v. Mosley,* 423 U.S. 96 (1975). This court in both *Wentela* and *Leach* determined that the *Mosley* test, originally applied in the right to silence context, is equally applicable to right to counsel cases. *Wentela,* 95 Wis. 2d at 295; *Leach,* 83 Wis. 2d at 211.

*Mosley* permits reinterrogation of defendants who have previously invoked their right to silence when: (1) the original interrogation is promptly terminated, (2) the questioning is resumed only after a significant period of time has passed, (3) fresh *Miranda* warnings are given at the outset of the second interrogation, (4) a different officer conducts the reinterrogation, and (5) the second interrogation deals with a crime that was not the subject of the initial interrogation. *Mosley,* 423 U.S. at 104–06. *Wentela* additionally required, as a condition of reinterrogation, that (1) the accused be afforded the opportunity to obtain assistance of counsel and that (2) reasonable steps be taken by police to obtain an attorney where the suspect did not utilize the opportunity to obtain counsel or where that

opportunity was not afforded. 95 Wis. 2d at 298–99. Judge Anderson believed that the seven factors were not satisfied.

In reaching this holding, the court determined that Turner's statement to Korff, "ask me questions you want to ask," did not constitute a voluntary waiver of Turner's right to counsel. It reached this conclusion despite the holding of the U.S. Supreme Court in *Edwards v. Arizona*, 451 U.S. 477, *reh'g denied* 452 U.S. 973 (1981), which states that once a defendant has invoked the right to counsel, police interrogation must cease unless the accused initiates "further communication, exchanges, or conversations with the police" after the right has been invoked. 451 U.S. at 484–85.

In contrast, the appeals court believed that the *Edwards* case controlled and that defendant had waived his right to counsel, in part, because he had initiated further conversations or exchanges with the police. The appeals court pointed to several other factors important to its determination that defendant had knowingly waived his right to counsel, including: his good physical condition, his education and reading level, his previous experience with the arresting officers, and previous experiences with various appointed counsel. Because we believe that *Edwards* controls, we now hold that the appeals court did not err in reversing the trial court decision on the right to counsel and waiver issues.

We are not persuaded by the defendant's argument that *Leach* and *Wentela* should control the disposition of this case. *Leach* and *Wentela* are both pre-*Edwards* cases which relied heavily on the holding in *Mosley* and which adapted *Mosley* to the right to counsel line of cases, with some modifications. *Leach*,

83 Wis. 2d at 210–11, 214; *Wentela*, 95 Wis. 2d at 295, 298–99. *Mosley* itself, however, indicated that invocation of the right to counsel, as mandated by *Miranda*, triggers a *per se* termination of questioning until an attorney is present. 423 U.S. at 104 n. 10. *Edwards* is not at all inconsistent with this principle.[1] A recent United States Supreme Court case, *Solem v. Stumes*, 465 U.S. 638 (1984), lends further support to the conclusion that the *Edwards per se* rule is now dispositive.

*Edwards* held that once the right to counsel has been invoked, police are absolutely prohibited from questioning a defendant until and unless it is established that the accused has subsequently "initiate[d] further communication, exchanges or conversations with the police," 451 U.S. at 484–85. Once this has been established, it must be shown that the defendant has waived the right to counsel. An accused waives the right to counsel when there is a voluntary, "knowing and intelligent relinquishment or abandonment of a known right or privilege." *Id.* at 482.

The threshold requirement in *Edwards*, stating that a defendant must have invoked the right to

---

[1] The court in *Edwards* stated that, "In ... *Mosley*, ... the court noted that *Miranda* had distinguished between the procedural safeguards triggered by a request to remain silent and a request for an attorney and had required that interrogation cease until an attorney was present only if the individual stated that he wanted counsel." 451 U.S. at 485. The *Edwards* court then went on to state that its *per se* rule, prohibiting reinterrogation of an accused in custody once the right to counsel has been invoked, "lend[s] ... substance" to the *Miranda* rule and its progeny, including *Mosley*, which deal with the right to counsel. *Id.*

counsel, has been undisputedly satisfied. The focus, therefore, turns to the two elements at issue in this portion of the appeal. Defendant initiated further conversations in two ways. First, he indicated to police that he would submit to questioning without the presence of an attorney, and, second, he "invited" Korff to begin the interrogation even though the police had not yet been able to locate his probation officer.

Since the facts establish that defendant initiated further conversations or exchanges with police after invocation of the right to counsel, the focus then shifts to whether the defendant validly waived his right to have an attorney present during questioning. Resolving the waiver question necessarily requires a case-by-case examination of all the facts and circumstances, including the defendant's background, experience, and conduct. *Edwards*, 451 U.S. at 482. We agree with the state and with the court of appeals' conclusion that this element of the *Edwards* analysis was satisfied as well.

The factors cited by the appeals court in support of its position that defendant's waiver was knowing and intelligent are persuasive. First, the appeals court correctly notes that an important factor in the "knowing and intelligent" analysis deals with the question of whether the defendant did in fact reopen the dialogue with police subsequent to the initial invocation of the right to counsel. *See, Edwards*, 451 U.S. at 486 n. 9 Second, the facts are simply inconsistent with a conclusion that the waiver was unknowing. Defendant was given his *Miranda* warnings, in both written and oral form. He, in addition, had previous experience with the arresting officers and with various appointed counsel five times in the past. Defendant's substantial

348

exposure to the criminal justice system militates against a determination that he was not aware of his right to counsel. Third, defendant signed a standard *Miranda* waiver from not once, but three times. There is no evidence in the record to suggest that he was in any way incapable of understanding what he was signing. Turner had a tenth-grade education, had a seventh-grade reading ability, and was not under the influence of any intoxicants or other narcotics or otherwise physically or mentally incapacitated at the time he signed the waiver.

Since we find that the appeals court properly applied the *Edwards* analysis to the facts of this case, we affirm its reversal of the trial court's suppression order. Therefore, statements made by the defendant subsequent to his invocation of the right to counsel on June 27 may be admitted into evidence upon remand to the trial court.

## II. DEFENDANT'S RIGHT TO SILENCE— JUNE 27 CONSENT TO SEARCH

The trial court suppressed the evidence seized at defendant's living quarters, utilizing the "fruit of the poisonous tree" doctrine, because it determined that defendant's consent to search and any evidence discovered was only obtained after the police had failed to scrupulously honor defendant's right to counsel.

The appeals court affirmed Judge Anderson's suppression order, but did so because it believed that the consent was obtained in derogation of defendant's constitutionally protected right to *silence*, rather than because of a right to counsel violation. Because we affirm the appeals court's holding that defendant waived his right to counsel and that the police had not

349

violated that right, we also agree with the appeals court that Judge Anderson improperly invalidated the consent to search on the right to counsel basis. Therefore, if the consent to search is invalid, it must be found invalid on grounds separate from the right to counsel issue. Defendant believes that the appeals court was correct in deciding that a violation of his right to silence, rather than his right to counsel, now provides a proper basis for invalidating the consent to search. We turn to that issue now.

Defendant believes that suppression is required on right to silence grounds[2] and that the court need look no further than *Miranda* to dispose of this issue. *Miranda* requires that a defendant be informed of various constitutional rights, including the right to silence, and that the defendant knowingly and intelligently waive those rights before evidence obtained as a result of interrogation can be used against the accused. 384 U.S. at 479.

In order to support his conclusion that *Miranda* and the fifth amendment apply here, defendant must necessarily argue that the police request to search constituted *interrogation* because of *Miranda's* limited applicability to *interrogation* of an accused. *Id*. at 444. The defendant concedes this and, in fact, states in his brief that "the action of the police after the defendant invoked his right to silence consisted of questioning and interrogation" and that "the police ... questioned [defendant] regarding consent to search his room."

---

[2]The right to silence derives from the fifth amendment to the United States Constitution, which provides in relevant part that no person "shall be compelled in any criminal case to be a witness against himself."

350

The state argues that defendant's reliance on *Miranda* and the fifth amendment is misplaced because both focus on the privilege against self-incrimination; however, the consent to search, at issue here, is properly governed by the fourth amendment which protects an individual's privacy rights.[3]

The thrust of the state's argument is that the fifth amendment and *Miranda* do not apply because defendant's consent to search was not a testimonial or communicative statement, nor was the request to search equivalent to interrogation. Since *Miranda* governs only in-custody *interrogation*, a mere request to search does not enjoy its protections. And since the fifth amendment protects a defendant from testifying against himself, merely complying with a request to give consent does not take on the necessary testimonial nature such that fifth amendment protections should be triggered.

We agree with the state that both the defendant and the court of appeals have improperly framed the consent to search issue in *Miranda* and fifth amendment terms. Those authorities do not control because consent to search is not testimonial or communicative in nature, even if the consent leads to the discovery of incriminating evidence.

To support our holding, we rely on the decision of the U.S. Supreme Court in *Schmerber v. California*, 384 U.S. 757 (1966), where the court described the scope of the fifth amendment protection against self-incrimination. The court in *Schmerber* held that the

---

[3]The fourth amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ."

withdrawal of blood from an accused and the admission of the blood analysis into evidence did not violate defendant's privilege against self-incrimination because "the privilege protects an accused only from being compelled to testify against himself, or otherwise provide the State with evidence of a *testimonial or communicative* nature ...." *Id.* at 761 (emphasis added). The court determined that the withdrawal of blood simply did not take on "testimonial or communicative" qualities.

Several cases have recognized that a consent to search is not an incriminating statement. *Cody v. Solem*, 755 F.2d 1323 (8th Cir. 1985), *cert. denied* — U.S. —, 106 S. Ct. 104 (1985); *United States v. Lemon*, 550 F.2d 467 (9th Cir. 1977); *United States v. Faruolo*, 506 F.2d 490, 495 (2d Cir. 1974). In Wisconsin, we have held that when a defendant merely consents to provide a handwriting sample or other physical evidence to the police, that conduct "does not even arguably implicate the constitutional restriction against self-incrimination contained in the Wisconsin Constitution" because it is not equivalent to testimonial activity. *State v. Doe*, 78 Wis. 2d 161, 175, 254 N.W.2d 210 (1977). Other jurisdictions have reached similar holdings. The court in *People v. Thomas*, 12 Cal. App. 3d 1102, 1110, 91 Cal. Rptr. 867, 872 (1970), stated that,

> "A consent to search, as such, is neither testimonial, nor communicative in the fifth amendment sense. If appearing in a lineup and speaking words used by a robber is not a 'disclosure of any knowledge [the accused] might have,' ... neither is a consent to search. The fact that the search leads to incriminating evidence does not make the consent testimonial, any more than the victim's

identification at the lineup gives such a quality to the words spoken by the suspect." (Citation omitted.) Also, *see, People v. Phillips*, 197 Colo. 546, 549, 594 P.2d 1053, 1055 (1979).

■

The underlying reason why a consent to search is not a testimonial utterance deals with the distinct interests *Miranda* and the fifth amendment are designed to protect vis-a-vis what consent to search principles and the fourth amendment are designed to protect. The *Miranda* decision's focus was on the need to protect the integrity and fairness of the trial, 384 U.S. at 466; *Schneckloth v. Bustamonte*, 412 U.S. 218, 240 (1973), while the fourth amendment has "nothing whatever to do with promoting the fair ascertainment of truth at a criminal trial." *Id.* at 242. The fourth amendment, instead, focuses on an individual's right to privacy and to be left alone. *Id.* Because the consent to search implicates fourth amendment, rather than fifth amendment/*Miranda* concerns, and because the weight of authority is against finding defendant's consent to search to be testimonial in nature, thereby triggering fifth amendment principles, we must hold that the appeals court erred in applying fifth amendment principles to the facts of this case.

The remaining question for us to consider deals with the voluntariness of defendant's consent to search. The analysis we utilize is that articulated in *State v. Rodgers*, 119 Wis. 2d 102, 349 N.W.2d 453 (1984).

■

The *Rodgers* standard for determining voluntariness of consent under the fourth amendment is based on the principles articulated in *Schneckloth*. Under *Schneckloth*, the test of voluntariness looks to

whether the accused has exercised a "free and unconstrained choice" or whether, alternatively, "'his will has been overborne and his capacity for self-determination critically impaired.'" 412 U.S. at 225, quoting *Culombe v. Connecticut*, 367 U.S. 568, 602 (1961). This is determined by looking to the totality of the circumstances. *Rodgers*, 119 Wis. 2d at 110. The state believes that consent was voluntarily given under the totality of the circumstances test. Defendant believes that the fact findings of the trial court should not be reversed. The trial court determined that the consent to search was not voluntary because of its finding that defendant's right to counsel had been violated.

No findings were made on the voluntariness of consent issue because the court suppressed the evidence seized and found the consent invalid on other grounds, namely, that police had failed to scrupulously honor defendant's right to counsel. Even though no specific fact findings were made, the court did make detailed fact findings regarding the circumstances surrounding the June 27 interrogation which would be relevant here. We examine those facts now to determine whether they would require a finding of involuntariness. We hold that they do not.

We find nothing in the record to support a finding of involuntariness. Defendant had earlier indicated his desire to speak with his attorney, but he later initiated conversation with police and waived that right. Subsequent to conferring with his probation officer, the defendant invoked his right to silence, and the police promptly ceased the interrogation. Thereafter, Turner read and signed a consent to search form at the request of the officers. There is no indication that he was incapable of understanding what he was

354

signing. There was no evidence of any overbearing tactics by police, nor was there any evidence of coercion.

We now hold that the trial court correctly determined that there was no evidence that would support a finding that defendant's will to resist was overcome. Accordingly, we determine that defendant's consent to search was voluntarily given. Therefore, the consent to search is admissible evidence, as are the items seized incident to that search.

## III. DEFENDANT'S RIGHT TO SILENCE— INCRIMINATING STATEMENTS MADE ON JUNE 28

The final right to silence issue deals with the admissibility of the statements made by the defendant on June 28. The trial court held that defendant's right to silence had been violated, based on its determination that not all of the *Mosley* right to silence factors were satisfied in this case. Because the *Mosley* factors were not satisfied, the court stated that a waiver of the constitutional right to remain silent could not be found, and, therefore, the statements obtained in violation of that right could not be admitted into evidence.

The court of appeals held that the reinterrogation of defendant on June 28 also constituted a failure by police to "scrupulously honor" defendant's right to silence. It reached this holding by utilizing the five-factor test of *Mosley*, 423 U.S. 96, and determined that the reinterrogation was constitutionally defective because it was conducted by the same officer who questioned defendant on June 27, it concerned the same subject matters as the initial interrogation, and

the existence of additional relevant factors (such as Turner's "segregated" detention in the county jail combined with restrictions placed on his ability to contact third parties while he was detained) made the time interval between the original interrogation and the reinterrogation as coercive as if a shorter time interval existed. Finally, the first *Mosley* factor, requiring that the original interrogation be promptly terminated, was not satisfied because the request for consent to search (already determined by the appeals court to constitute "interrogation") followed almost immediately from defendant's invocation of his right to silence. Because it believed that four of the five *Mosley* factors were not satisfied, the appeals court concluded that defendant's right to silence had not been scrupulously honored and, therefore, affirmed the trial court order suppressing the statements made by the defendant on June 28. It reached this holding despite the statement in its opinion that the *Mosley* factors are not exclusively controlling and should not be woodenly applied.

The parties disagree on the flexibility of the *Mosley* analysis. The state objects to the appeals court decision on this issue because it believes that the court incorrectly drew its own conclusions of fact and incorrectly ignored its own directive that the five *Mosley* factors are not to be "woodenly" applied. We address the state's arguments in turn. But before we do, we note that it is undisputed that the third *Mosley* factor was satisfied and that the fourth and fifth factors were not. *See, infra* at 345–346.

First, the state argues that the appeals court improperly concluded that the police failed to promptly terminate interrogation of the defendant when they

356

asked for his consent to search. But because we have today concluded that no fifth amendment principles are implicated when police merely request a consent to search or when a defendant merely accedes to that request, we must agree with the state that the appeals court improperly held that the first *Mosley* factor was violated. The first *Mosley* factor was not violated because there was no immediate reinterrogation. Requesting consent to search is not interrogation. Accordingly, we reverse the court of appeals on this issue.

Second, the state argues that *Mosley's* second factor, requiring that interrogation be resumed only after a significant period of time, has also been satisfied. The state asserts that the twenty-four-hour time period between interrogations was not so long as to create pressure on defendant nor so short as to violate the *Mosley* rule. It cites two eighth circuit cases where the court has held that periods of twenty and twenty-four hours have been significant time spans for *Mosley* purposes. *Jackson v. Wyrick*, 730 F.2d 1177, 1180 (8th Cir. 1984), *cert. denied* 496 U.S. 849, 105 S. Ct. 167 (1984); *United States v. Finch*, 557 F.2d 1234, 1236 (8th Cir. 1977).

Finally, the state asserts that the correct application of the *Mosley* test which should be applied in this case is neither that applied by the trial court nor that applied by the court of appeals. Rather, it argues that an analysis which uses the five-point test as a *guide*, rather than as a strict standard that *must* be satisfied in each case, is proper. This proposed analysis merely asks if the police persisted in efforts to wear down a defendant's resistance in order to make him talk.

It is clear from our examination of the cases that courts are moving toward a more flexible analysis

under *Mosley*. It seems apparent that a wide range of time gaps between interrogations may satisfy *Mosley*, see, *Jackson*, 730 F.2d at 1180; *Finch* 557 F.2d at 1236; and *Mosley*, 423 U.S. at 106.

An illustrative case is *State v. Hartwig*, 123 Wis. 2d 278. *Hartwig* found that the second *Mosley* factor was not satisfied. It made this finding based on the fact that defendant was subjected to further interrogation only one-half hour after he invoked his right to silence. The court also considered it significant that when the initial interrogation ceased, the questioning officer placed a tape recorder in front of defendant, turned it on, and told him that any of his statements would be recorded. The court stated that,

> When this fact is combined with [the investigator's] resuming the interrogation little more than one-half hour later, it is apparent that little was done by means of interrupting the interrogation to assure the defendant that his invoked right to silence would be scrupulously honored. On the contrary, placing the tape recorder in front of the defendant and continuing the questioning after only a brief interruption would tend to have the coercive effect of letting the defendant know that it was expected he would make a statement. 123 Wis. 2d at 286.

Thus, the combination of these factors could have made it clear to defendant, despite the invocation of his rights and despite police recitations of his *Miranda* rights, that the police were not prepared to honor his rights. When these infirmities were combined with the fact that the same officer resumed questioning

regarding the same subject, the court stated that a finding of a violation of defendant's right to remain silent was compelled. *Id.* at 287.

Utilizing the *Hartwig* analysis, we find that the "significant period of time" factor has been satisfied and that it is not dispositive that the same officer conducted the reinterrogation regarding the same crime. (Courts have held that the failure to satisfy each *Mosley* factor is not fatal. *See, Jackson*, 730 F.2d at 1177; *Finch*, 557 F.2d at 1236.) The facts here involved a twenty-four-hour time gap, far more substantial than the time gap in *Hartwig*. In addition, unlike the facts in *Hartwig*, there is nothing here to support a finding that little was done to assure defendant that his right to silence would not be scrupulously honored or that other improper tactics were used that could have arguably coerced defendant into talking. Here, police promptly terminated questioning when defendant invoked his right to silence. They told him several times on the 27th that he need not respond to police questioning without the presence of an attorney. He was given *Miranda* warnings on the second day of interrogation, in which he was once again informed that he had the right to remain silent. He signed standard waiver forms at that time and gave no indication to police that he did not wish to answer their questions. In short, there is no evidence on the record that the officers made any attempt to induce defendant not to invoke his right to silence on June 28 or any attempt to coerce him to talk. *Jackson*, 730 F.2d at 1180.

Our conclusion is strengthened by an examina-

tion of the record, which establishes that the delay in interrogation was caused by an attempt to follow up on defendant's alibi and also to question witnesses. Absent improper persuasive tactics by the police, we decline to hold that defendant's right to silence was violated when police questioned him on June 28. It is not determinative, absent other evidence of police overbearing or coercive tactics, that all of the *Mosley* factors were not satisfied. Therefore, because we find that defendant's right to silence was not violated, we reverse the determination of the appeals court that the right to silence was not scrupulously honored.

## IV. THE VOLUNTARINESS OF DEFENDANT'S JUNE 28 CONFESSION

The trial court held that defendant's confession, given on June 28, was involuntarily given. Applying the "totality of the circumstances" test, the trial court determined that the police had sufficient evidence to charge defendant at the time he was arrested but that they chose to wait to press charges until Turner had provided a statement. Further, the court regarded the delay in charging—thirty-seven hours passed before defendant was charged after he was initially taken into police custody—as an important factor in its analysis, as was the fact that defendant was subjected to a total of at least twelve and one-half hours of questioning during a two-day period. Because the police had sufficient evidence to charge defendant at the time of his arrest, the court stated that it was compelled to hold that the delay in charging (combined with the long interrogations) was inherently

coercive under the totality of the circumstances test. Because of the inherently coercive conditions that defendant was subjected to, the court determined that the June 28 confession was not the voluntary product of a free and unconstrained will and, therefore, could not be admitted into evidence.

The court of appeals reversed the trial court finding because it found that several of the findings of historical or evidentiary fact made by the trial court were against the great weight and clear preponderance of the evidence. Specifically, it found that there was nothing in the record to sustain the trial court's finding that there was sufficient evidence to charge defendant at the time of his arrest and that the police delayed the charging only to obtain a statement from Turner. The appeals court also concluded that the trial court erred when it held that there was a positive photo identification of the defendant before he gave the incriminating statements on June 28.

Having determined that these factual findings of the trial court were clearly erroneous, the appeals court then went on to independently determine whether, as a matter of law, defendant's statements were voluntarily made. The appeals court treated this question as one of constitutional fact under the standard of review articulated in *State v. Woods*, 117 Wis. 2d at 721, and, therefore, made its own independent determination based on the totality of the circumstances surrounding the making of the statement. Applying this test, the appeals court held that defendant's inculpatory statements made on June 28 were made voluntarily. In so holding, it stated that neither the length of the interrogations nor the length

of the detention alone could support a finding of "inherently coercive" circumstances sufficient to render the statements involuntary. Because, on the whole, Turner's interrogations and detentions were "interspersed with accommodations to his personal needs and comfort and were devoid of any improper police stratagems or coercion," the appeals court stated that a finding of involuntariness was not warranted. We agree with the appeals court's determination of voluntariness.

We first note that the appeals court correctly overturned Judge Anderson's findings that there was sufficient evidence to charge Turner on June 27 at 8:30 a.m. and that he had been positively identified at that time. Contrary to the holding of the trial court, our examination of the record discloses that there was in fact insufficient evidence to charge defendant at the time he was taken into custody on June 27. As the appeals court correctly noted, the victim selected defendant's picture as resembling the assailant but was unable to state with certainty that he was in fact the culprit. Even on June 28, prior to the interrogation, a witness who was shown a photo array was unable to state with certainty that defendant was the Greyhound depot suspect. In addition, while detective Korff did admit that a reason for the delay in interrogation was to obtain a statement from the defendant, the appeals court was correct in concluding that it was not the *only* reason. Police testimony established that the time period between the interrogations on the 27th and 28th was used in order to investigate defendant's alibi, interview alibi witnesses, and show the photo array to the witness Kelly Mittelstadt, who was in Milwaukee. There is no proof that the delay was used as a coercive method or a

delay tactic to induce defendant to talk. The police commenced questioning on the 28th shortly after they had shown the photo array to Mittelstadt. This fact further strengthens our conclusion that the delay was no longer than necessary to interview prospective witnesses and to investigate defendant's alibi defense.

Since we have determined that the appeals court correctly determined that the trial court made erroneous findings of fact, we now turn to the question of whether, separate from these findings, the appeals court correctly determined that the defendant's inculpatory statement of June 28 was voluntarily made. We hold that the appeals court correctly utilized the totality of the circumstances test in its finding of voluntariness and considered all facts relevant to that analysis.

The totality of the circumstances test requires the reviewing court to balance the personal characteristics of the accused against the pressures brought to bear, arguably forcing him or her to make the incriminating statement. The personal characteristics of the defendant include age, intelligence, education, physical and emotional condition, and prior experience with police. These factors are to be balanced against "any inducements, methods and stratagems which were used to persuade the accused to confess," such as the length and condition of the interrogation, the psychological and physical pressures used by the questioner, and whether defendant was apprised of his *Miranda* rights to counsel and to remain silent. *Barrera v. State*, 99 Wis. 2d 269, 291–92, 298 N.W.2d 820 (1980), *cert. denied* 451 U.S. 972 (1981).

The appeals court independently reviewed these factors and determined that defendant's statements

were voluntary. To support its conclusion, it referred to the fact findings of the trial court which made detailed reference to the generally accommodating conditions of the interrogation and custody[4] and to defendant's personal characteristics. He was in good mental and physical condition, was young and able to read, knew the arresting officers, and was familiar with the criminal process. The appeals court stated that the combination of these factors indicated that there was no coercion which would justify a finding of involuntariness.

Apart from these factors, the appeals court stated that the only arguable source of coercion might simply stem from the length of interrogation and custody, but that these factors were insufficient to justify a *per se* finding of involuntariness. We agree with the court of appeals that the length of interrogation and custody, while certainly relevant to the discussion of voluntariness, simply is not dispositive in and of itself given the fact that Turner's interrogations were interrupted by frequent accommodations to his personal needs and were not accompanied by any improper police coercion. We decline to adopt a rule that would force us to hold that custody and/or interrogation for a specified time period is inherently coercive. Adopting such a rule would directly contravene the flexible approach with which the totality of the circumstances analysis provides us. While admittedly an imperfect rule, we decline to depart from it now and hold that the appeals court properly considered all relevant factors

---

[4]For example, defendant was not denied the opportunity to call his wife, he was not threatened in any way, and his physical needs were taken care of.

that would have a bearing on the voluntariness question.

Accordingly, because we find that the appeals court did not err in reversing the trial court's findings of involuntariness and in discounting as erroneous two of its findings of fact, we affirm the intermediate court's holding of voluntariness.

To summarize, we hold the following:

(1) We affirm the appeals court's reversal of the trial court decision which held that defendant's right to counsel was violated. Because we agree with the appeals court that defendant's right to counsel was not violated and that defendant waived his right to counsel, we hold that the statements made by the defendant on June 27 were improperly excluded and that in turn, his consent to search (and the items seized incident to that search) could not be excluded on the right to counsel basis.

(2) We reverse the appeals court's determination that defendant's right to silence was not scrupulously honored and that this violation rendered defendant's consent to search invalid. Therefore, the suppression of the items seized on right to silence grounds was improper.

(3) We reverse the appeals court's determination that the police failed to scrupulously honor Turner's right to remain silent when they reinstituted interrogation on June 28, the second day of the questioning. Accordingly, the statements made by the defendant on that day were improperly excluded from the evidence.

(4) We affirm the appeals court's reversal of the trial court's finding that the statements made by defendant on June 28 were involuntary. Accordingly, those statements may be admitted.

*By the Court.*—The decision of the court of appeals is affirmed in part and reversed in part, and the cause is remanded to the circuit court for further proceedings consistent with this opinion.

SHIRLEY S. ABRAHAMSON, J. (*dissenting in part*). I would affirm the decisions of the circuit court and the court of appeals suppressing the defendant's statement of June 28.

On June 27, upon being questioned about a crime, the defendant exercised his right to remain silent. On June 28 the police resumed questioning him about the same crime. To avoid suppressing the June 28 statement, the majority must apply what the majority calls a "more flexible analysis" under *Mosley*. I conclude that *Mosley* cannot be flexed as far as the majority states without frustrating the purpose of the *Mosley* test.

The majority isolates and analyzes each *Mosley* factor in a vacuum and then admits the confession into evidence because the police conduct clearly satisfies two factors (original questioning promptly terminated; Miranda rights given at second questioning); clearly does not satisfy two factors (different officers conducted the second interrogation; second interrogation limited to a crime not the subject of the first interrogation); and may be viewed as satisfying one factor (second interrogation may be resumed only after passage of significant period of time). In my view this three out of five approach does not qualify as a flexible analysis. I conclude that the factors should be discussed separately and then viewed as a totality. The factors are interrelated, and unless they are understood to be so, the factors are misapplied. A flexible application of the *Mosley* factors would re-

quire that the court look at the factors together, as well as in isolation, with a view towards the underlying goal or value they are designed to promote.

The *Mosley* test is designed to protect a suspect from the coercion that necessarily exists during custodial questioning continued after a suspect has invoked his right to remain silent. I agree with the circuit court and the court of appeals that in this case the defendant's assertion of a right not to speak has not been scrupulously honored.