# COURT OF APPEALS
## DECISION
## DATED AND FILED

## July 15, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

| | |
|---|---|
| Appeal No. **2020AP1004-CR** | Cir. Ct. No. **2015CF1229** |
| **STATE OF WISCONSIN** | **IN COURT OF APPEALS**<br>**DISTRICT IV** |

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

  V.

PERCY L. OLIVER,

    DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Rock County: MICHAEL A. HAAKENSON, Judge. *Affirmed.*

Before Kloppenburg, Graham, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Percy L. Oliver appeals a judgment of conviction for second-degree reckless homicide. Shortly after his arrest, police asked Oliver to provide a sample of his DNA and Oliver agreed to do so. On appeal, he argues that the circuit court should have suppressed the evidence obtained in this warrantless search because his consent was not voluntary. Based on the totality of the circumstances as well as the circuit court's findings of fact and reasonable inferences, we conclude that Oliver voluntarily consented to the search. Therefore, we affirm.

## BACKGROUND

¶2 Oliver's roommate was found dead below the balcony of their shared apartment in Beloit, Wisconsin. Police located Oliver, who agreed to accompany them to the police station. At the station, police informed Oliver that he was in custody concerning his roommate's death. After police advised Oliver of his *Miranda* rights,[1] Oliver stated that he did not want to answer any questions without the advice of an attorney.

¶3 Police then informed Oliver that he was under arrest for substantial battery. A detective swabbed his hands, telling Oliver she was doing this "under exigent circumstances ... in case the victim's DNA was on his hands." Later that day, Oliver was booked in the Rock County jail, and police obtained a DNA sample for the State's DNA database.[2] It does not appear that anything of

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[2] *See* Wis. Stat. § 165.76(1)(gm) (2019-20) (requiring DNA be collected from individuals arrested for a violent crime).

All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

evidentiary value was obtained from either of the samples taken on the day of the arrest, and Oliver does not challenge them on appeal.

¶4      The DNA sample that is the subject of this appeal was taken at the jail the next day.  The following facts are undisputed.  A detective asked an employee at the jail to contact Oliver and see if he would consent to providing a DNA sample.  Oliver said that he would.  The detective arrived at the jail and again asked Oliver whether he would be willing to give a DNA sample.  The detective did not read Oliver his *Miranda* rights at that time,[3] nor did the detective inform Oliver that he could withhold his consent.  Oliver again agreed to give a sample, and the detective collected the sample by swabbing Oliver's cheek.  An expert hired by the State later matched the DNA from this sample to "touch DNA" recovered from the handle of a bloody knife found in the apartment.

¶5      Oliver moved to suppress this DNA sample on the ground that his consent was involuntary.  Following the denial of this motion and several other motions that Oliver does not appeal, Oliver pleaded no contest to and was convicted of second-degree reckless homicide.  This appeal follows.

## DISCUSSION

¶6      The Fourth Amendment guarantees that the "right of the people to be secure in their persons ... against unreasonable searches and seizures, shall not be

---

[3] Our supreme court has explained that police are not required to provide *Miranda* warnings before asking for consent to search because such requests are not "interrogations." *State v. Turner*, 136 Wis. 2d 333, 351, 401 N.W.2d 827 (1987) ("[C]onsent to search is not testimonial or communicative in nature, even if the consent leads to the discovery of incriminating evidence.").  Oliver does not challenge the constitutionality of the detective's request for a DNA sample on Fifth Amendment grounds.

violated ...." U.S. CONST. AMEND. IV; *see also* WIS. CONST. art. I, § 11. A cheek swab to gather DNA is a search for Fourth Amendment purposes. *Maryland v. King*, 569 U.S. 435, 446 (2013).

¶7    A warrantless search is unreasonable and therefore unconstitutional unless it falls within one of the "'specifically established and well-delineated' exceptions to the Fourth Amendment's warrant requirement." *State v. Williams*, 2002 WI 94, ¶18, 255 Wis. 2d 1, 646 N.W.2d 834 (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). Voluntary consent is one of these "established and well-delineated exceptions." *See Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). When a defendant challenges evidence gathered pursuant to the consent exception to the warrant requirement, the State bears the burden to prove that the consent was voluntary by clear and convincing evidence. *State v. Phillips*, 218 Wis. 2d 180, 196, 577 N.W.2d 794 (1998).

¶8    Consent is voluntary when the totality of the circumstances shows it was the product of "'an essentially free and unconstrained choice'" given in the absence of "'duress or coercion, express or implied.'" *State v. Blackman*, 2017 WI 77, ¶¶56-57, 377 Wis. 2d 339, 898 N.W.2d 774 (quoting *Schneckloth*, 412 U.S. at 227); *see also Phillips*, 218 Wis. 2d at 197. When evaluating the totality of the circumstances, courts may consider a variety of nonexclusive factors, including, among others, the presence or absence of coercive police tactics such as deception, threats, intimidation, or coercive environmental factors; whether the conditions attending the request to search were congenial, non-threatening, and cooperative, or the opposite; the defendant's characteristics, including age, intelligence, education, physical and emotional condition, and prior experience with the police; and whether the police advised the defendant or the defendant otherwise knew of the right to refuse to consent to the search. *See, e.g.*, *State v.*

*Artic*, 2010 WI 83, ¶33, 327 Wis. 2d 392, 768 N.W.2d 430; *Phillips*, 218 Wis. 2d at 198-204.

¶9      Whether consent to a search was voluntary is a question of constitutional fact. *Phillips*, 218 Wis. 2d at 194. We review the circuit court's findings of historical fact for clear error, and we review the application of constitutional principles to the facts de novo. *Id.*; *see also State v. Wallace*, 2002 WI App 61, ¶16, 251 Wis. 2d 625, 642 N.W.2d 549 (noting that whether an individual voiced consent to a search is a question of fact but the voluntariness of the statement is a question of law).

¶10     In its oral decision, the circuit court found it significant that Oliver voiced consent to the search at issue on two separate occasions—first when asked by the correctional officer, and second when asked by the detective. The court also found that "Oliver had no problems asserting his *Miranda* rights and his right to an attorney" the day before the search, at the time he was arrested. Relying on these facts and, implicitly, on the lack of evidence suggesting that Oliver's personal characteristics made him especially susceptible to coercion and the complete lack of coercive tactics by the police, the court inferred that Oliver "understood and he had the ability and the fortitude ... to deny the request, to indicate he did not consent" to the search. Therefore, based on the totality of the circumstances, the court found that Oliver's consent was voluntary.

¶11     Although Oliver does not expressly challenge any of the circuit court's findings of historical fact, he does contest the reasonableness of the inferences the court drew from those findings. Specifically, Oliver argues that it is unreasonable to infer that he understood he could withhold consent and that he had the ability and fortitude to do so. Oliver points to three facts: (1) he had been in

5

police custody for 24 hours; (2) he had twice been compelled to give DNA samples the day before; and (3) the detective did not inform him that he had a right to withhold consent to the DNA sample in question. Relying on these facts, Oliver argues that he did not know that he could withhold consent to the search and that his consent was not voluntary.[4]

¶12    We begin with the premise that, under binding case law, the circuit court was not required to find that Oliver knew that he had the right to withhold consent in order to determine that his consent was voluntary. That is, consent may be voluntary even when the State cannot prove that the person was aware of the right to refuse. *See Phillips*, 218 Wis. 2d at 203 ("[T]he State is not required to demonstrate the defendant knew that he could refuse consent."). Nevertheless, "knowledge of the right to refuse consent is one factor to be taken into account" when determining whether consent was voluntary. *Schneckloth*, 412 U.S. at 227; *see also Phillips*, 218 Wis. 2d at 203.

¶13    Oliver asserts that police custody is an "inherently coercive environment," and the fact that Oliver had been in jail for 24 hours at the time he consented to the search weighs heavily against a determination that his consent was voluntary. We are not persuaded. We acknowledge that the transition from freedom to detention "represents a sharp and ominous change" that "may give rise

---

[4] Although Oliver mentions personal characteristics in his appellate brief, including his age (69 at the time of his arrest) and the fact that his competency was challenged during the circuit court proceedings, he does not develop an argument about these characteristics. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (we need not address undeveloped arguments). Likewise, during the circuit court proceedings, Oliver did not argue that any of his personal characteristics weighed against a determination of voluntariness. *See Schill v. Wisconsin Rapids Sch. Dist.*, 2010 WI 86, ¶45 & n.21, 327 Wis. 2d 572, 786 N.W.2d 177 (arguments are generally considered forfeited if they were not presented in the circuit court). Accordingly, we address Oliver's personal characteristics no further.

to coercive pressures." *See Howes v. Fields*, 565 U.S. 499, 511 (2012). Yet, confinement following a lawful arrest, by itself, does not necessarily cause the sort of coercion or duress that renders consent involuntary. *Cf. State v. Floyd*, 2017 WI 78, ¶32, 377 Wis. 2d 394, 898 N.W.2d 560 (drawing a similar conclusion regarding persons seized in a traffic stop who consented to a search). There is no indication in the record that police deceived, threatened, or intimidated Oliver. Nor did the police make any explicit or implicit promises to obtain his consent under duress. The absence of any facts in the record to suggest coercive police behavior or a coercive physical environment weighs in favor of voluntariness. *See Phillips*, 218 Wis. 2d at 197-98.

¶14 Oliver also suggests that the fact that two DNA samples were previously taken from him without his consent weighs against a determination that his consent to the search in question was voluntary. The State counters that the contrast in the circumstances surrounding the earlier samples and the search in question suggests that Oliver's consent was voluntary. That is, when police swabbed Oliver's hands and took a sample for the DNA database on the day of his arrest, the officers told Oliver what they were planning to do; by contrast, officers twice asked Oliver whether he would agree to the search in question. We are persuaded by the State's argument. We conclude that any coercive pressure or duress that Oliver may have felt as a consequence of the prior searches is outweighed by the fact that Oliver was asked to consent and had two opportunities to refuse.

¶15 Finally, Oliver argues that the fact that the detective did not tell him that he could refuse to consent weighs against voluntariness. We disagree for the following reasons.

7

¶16    As our supreme court has explained, "whether the police informed the defendant that he could refuse consent" is one factor to consider in our assessment of voluntariness. *Artic*, 327 Wis. 2d 392, ¶33.[5]   However, Wisconsin courts have also explained that police are not required to inform suspects of the right to refuse. *See, e.g.*, **State v. Bermudez**, 221 Wis. 2d 338, 351, 585 N.W.2d 628 (Ct. App. 1998) ("Although the officers did not inform her that she could withhold consent, this is not fatal to a determination of voluntariness. 'The state's burden in a consent search is to show voluntariness, which is different from informed consent.'" (citations omitted)).

¶17    In this case, the circuit court inferred that Oliver *did* know that he could withhold consent, even though the detective did not specifically inform Oliver of the right to refuse.  We uphold the reasonable inferences drawn by the court even when the inference was derived from evidence that could support contrary factual inferences. **Stevenson v. Stevenson**, 2009 WI App 29, ¶14, 316 Wis. 2d 442, 765 N.W.2d 811.  Oliver asserts that the inference the court made is not reasonable—he contends that "the fact that ... Oliver invoked his right to an attorney after being informed of his rights does not demonstrate that he had the understanding or ability to resist the coercive pressures at play without being informed of his right to withhold consent."  However, the court inferred Oliver's knowledge based on the totality of his interactions with the police, and the inference drawn by the court is reasonable, especially in light of our conclusions

---

[5] *See also* **State v. Kiekhefer**, 212 Wis. 2d 460, 471-73, 569 N.W.2d 316 (Ct. App. 1997) (an officer's failure to inform the defendant of the right to withhold consent, in combination with other factors including the officer's "sobering show of force" and comments "intended to lead [the defendant] to believe that resistance was futile and that [the officer] had lawful authority to search … with or without [the defendant's] consent," rendered the consent involuntary).

8

above. For all these reasons, the fact that the detective did not inform Oliver that he could withhold consent does not undermine the circuit court's reasonable determination that Oliver's consent was voluntary.

¶18 Having rejected Oliver's arguments to the contrary, we conclude that the totality of the circumstances shows that Oliver's consent was the product of "'an essentially free and unconstrained choice'" given in the absence of "'duress or coercion, express or implied.'" **Blackman**, 377 Wis. 2d 339, ¶56-57 (citation omitted). Oliver was asked to consent to the search in question on two distinct occasions, and both times he said yes. There is no evidence that the detective used deception, trickery, misrepresentation, or threats to coerce this response, nor is there evidence that he gave this response under duress. Therefore, we affirm.[6]

---

[6] The State also argues, in the alternative, that the inevitable discovery and harmless error doctrines would support affirming Oliver's conviction even if we concluded that police obtained his DNA without his voluntary consent. We need not address these arguments because our conclusion about voluntariness is dispositive. **Barrows v. American Fam. Ins. Co.**, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 (2013). We nevertheless pause to comment on what we view as a troubling aspect of the State's argument about inevitable discovery.

The State contends that discovery of Oliver's DNA was inevitable because, if Oliver had refused to consent to the search, "police had plenty of independent evidence to support issuance of a search warrant." We understand the State to be arguing that an officer with probable cause to obtain a warrant may seize the evidence in a warrantless search, and that the State can defend against a suppression motion on the theory that discovery was inevitable because the officer *could have* obtained a warrant prior to the illegal search. This view of the inevitable discovery doctrine is inconsistent with Wisconsin law and would undermine the purpose of the warrant requirement. *See* **Murray v. United States**, 487 U.S. 533, 542, (1988) (providing that inevitable discovery requires a "later, lawful seizure" that is "genuinely independent of an earlier, tainted one"); **State v. Pickens**, 2010 WI App 5, ¶49, 323 Wis. 2d 226, 779 N.W.2d 1 ("If the existence of probable cause for a warrant excused the failure to obtain a warrant, the protection afforded by the warrant requirement would be much diminished."); *see also* **United States v. U.S. Dist. Ct. for E. Dist. of Mich., S. Div.**, 407 U.S. 297, 316 (1972) (the warrant requirement is "an important working part of our machinery of government, operating as a matter of course to check the 'well-intentioned but mistakenly over-zealous executive officers' who are a part of any system of law enforcement" (quoting **Coolidge v. New Hampshire**, 403 U.S. 443, 481 (1971) (plurality opinion))).

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.