STATE of Wisconsin, Plaintiff-Respondent,

v.

Randy Lee HARTWIG, Defendant-Appellant-Petitioner.

Supreme Court

*No. 83–1371–CR. Argued November 27, 1984.—
Decided April 30, 1985.*

(Also reported in 366 N.W.2d 866.)

For the defendant-appellant-petitioner there were briefs and oral argument by *Mary E. Waitrovich,* assistant state public defender.

For the plaintiff-respondent the cause was argued by *Barry M. Levenson,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

DAY, J. This is a review of an unpublished decision of the court of appeals affirming the judgment of conviction entered by the circuit court for Green county, Honorable Frederick P. Kessler, Reserve Judge, presiding, against the defendant, Randy Lee Hartwig. The conviction was for second-degree sexual assault in violation of sec. 940.225(2)(a), Stats. 1981–82,[1] and for attempted first-degree sexual assault in violation of sec. 940.225(1)(d),[2] and sec. 939.32(1).[3]

The issues raised on review are: (1) The defendant invoked his right to remain silent when he was questioned for the first time. Did the subsequent questioning by police under the facts of this case constitute a failure

---

[1] "Sec. 940.225 Sexual assault. . . . (2) SECOND DEGREE SEXUAL ASSAULT. Whoever does any of the following is guilty of a Class C felony:

"(a) Has sexual contact or sexual intercourse with another person without consent of that person by use or threat of force or violence."

[2] "Sec. 940.225 Sexual assault. (1) FIRST DEGREE SEXUAL ASSAULT. Whoever does any of the following is guilty of a Class B felony:

"(d) Has sexual contact or sexual intercourse with a person 12 years of age or younger."

[3] "Sec. 939.32 Attempt. (1) Whoever attempts to commit a felony or a battery as defined by s. 940.19 may be fined or imprisoned or both not to exceed one-half the maximum penalty for the completed crime. . . ."

to "scrupulously honor" that right so that incriminating statements made by the defendant during subsequent questioning should have been suppressed? (2) Had the defendant invoked his right to counsel by inquiring if he had the right to a lawyer?

We conclude that, under the facts of this case, the police failed to "scrupulously honor" the defendant's right to remain silent when they subsequently questioned him after he had invoked that right. This was a violation of the defendant's fifth amendment right to remain silent.[4] Because of this conclusion, we need not address the issue of whether the defendant invoked his right to counsel. We therefore reverse the court of appeals and remand this case for a new trial.

On July 9, 1982, at approximately 7:00 a.m., Officer McClain arrested the defendant on a complaint of sexual assault and took him to the Brodhead Police Station. Officer McClain testified that upon their arrival at the station, the defendant asked "about having a lawyer."

---

[4] The fifth amendment is applicable to the states by means of the fourteenth amendment. The fifth amendment to the United States Constitution provides:

"No person shall be held to answer for a capitol, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation."

The fourteenth amendment to the United States Constitution provides in pertinent part:

"Section 1. . . . No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

When asked what the defendant said, Officer McClain testified that he said "something to the effect, aren't you supposed to read me my rights and do I have the right to a lawyer, something to that effect." Officer McClain then testified: "I told him that after reading his rights he did have the right to a lawyer but first I must read him the rights." He then advised the defendant of his *Miranda* rights[5] which include the right to remain silent and the right to counsel. According to Officer McClain, when the defendant was asked whether he understood his rights, he answered "yes." When he was asked whether he wanted to make a statement or answer questions, the defendant answered "no."

Officer McClain testified that he then sent for a tape recorder and advised the defendant that he was going to turn it on. He told the defendant that the recorder was there so no mistake would be made in case the defendant said anything. According to Officer McClain the defendant then said "something to the effect that, if I say anything, they will use it against me and I will be in even longer."

No additional questions were asked during a period of approximately thirty-five minutes. Then Investigator Argue of the Green County Sheriff's Department arrived. He also advised the defendant of his *Miranda* rights. The defendant was again asked if he wished to make a statement. Officer McClain, who was also present when Investigator Argue asked the defendant if he wished to make a statement, testified as follows:

"[Mr. Merry, Defendant's Counsel] : And did you ask him at the Brodhead Police Station again if he wanted to make a statement?
"[Officer McClain] : I didn't, no.
"[Mr. Merry] : Did anyone else?
"[Officer McClain] : Investigator Argue did after he arrived and re-read the defendant his rights.

[5] *Miranda v. Arizona*, 384 U.S. 436 (1966).

"[Mr. Merry] : At the Brodhead police station?

"[Officer McClain] : Yes sir.

"[Mr. Merry] : What was his answer then?

"[Officer McClain] : When Investigator Argue read him his rights he again answered, to did you understand your rights, he answered yes. To the second part he again answered no.

"[Mr. Merry] : He answered no, I do not want to make a statement?

"[Officer McClain] : Yes sir."

Investigator Argue testified that the defendant responded with "something like, I don't know what good that will do." Argue then advised the defendant that the police had enough to charge him and that they would take him to the Green county jail. The defendant remained mute and Investigator Argue left to talk to the victim.

At about 9:28 a.m., after the defendant had been transferred to the Green County Sheriff's Department, Argue again advised the defendant of his *Miranda* rights. These rights were read from a voluntary statement and waiver form on which the defendant initialed each line and then signed the form waiving his rights. Argue then took a statement from the defendant wherein he confessed to the sexual assault for which he was arrested and to other incidents of sexual misconduct. Later, the defendant was again advised of his rights and given a typed copy of the statement he made that morning. He read and signed the typewritten statement about 1:54 p.m. that afternoon.

When both Officer McClain and Investigator Argue sought to question the defendant, the offense for which he was arrested was the subject matter of their inquiry.

In its order filed November 9, 1982, the circuit court denied the defendant's motion to suppress statements made by the defendant to police officers. On January 20, 1983, the defendant entered a plea of no contest to the charges of second-degree sexual assault and at-

tempted first-degree sexual assault and was convicted and sentenced. The court of appeals held that the defendant's right to counsel and right to remain silent were not violated and, therefore, the court affirmed the conviction. We accepted this review to determine whether the defendant's fifth amendment rights to counsel or to remain silent as set forth in *Miranda v. Arizona,* 384 U.S. 436, 444, 445 (1966), were violated, requiring suppression of incriminating statements made by the defendant to the police.

In such cases, this court has stated the standard of review as follows:

"The standard of review by the appellate court of the trial court's findings of evidentiary or historical facts is that those findings will not be upset on appeal unless they are contrary to the great weight and clear preponderance of the evidence. (Cite omitted). This standard of review does not apply, however, to the trial court's determination of constitutional questions. Instead, the appellate court independently determines the questions of 'constitutional' fact. (Cites omitted). These questions are not questions of evidentiary or historical fact, but are rather questions that require 'application of constitutional principles to the facts as found. . . .' *Mazur,* 90 Wis. 2d at 309, quoting *Brown v. Allen,* 344 U.S. 443, 507 (1953) (Opinion of Frankfurter, J.)." *State v. Woods,* 117 Wis. 2d 701, 715, 345 N.W.2d 457 (1984).

## (1) *RIGHT TO REMAIN SILENT*

The defendant asserts that the statements he made to the police should not have been admissible as evidence because, after he had invoked his right to silence, the state violated that right. We agree.

"Unless adequate protective devices are employed to dispel the compulsion inherent in custodial surround-

ings, no statement obtained from the defendant can truly be the product of free choice." *Miranda,* 384 U.S. at 458. The intention of the Court in *Miranda* was to adopt a fully effective means to notify the accused of his right to silence and to assure him that the exercise of that right will be "scrupulously honored." *Michigan v. Mosley,* 423 U.S. 96, 103 (1975). The critical safeguard of the right to silence is the right to terminate questioning by invocation of the right to silence. *Mosley,* 423 U.S. at 103. The state may again interrogate the accused after the right to silence has been invoked provided that right to silence is "scrupulously honored." *Mosley,* 423 U.S. at 104. Determining whether the right to silence has been scrupulously honored requires the application of constitutional principles to the facts of the case and is subject to independent ap_ellate review.

In *Mosley,* the United States Supreme Court held, on the facts before it, that the interrogation of the defendant was properly resumed and that the defendant's right to silence was not violated. *Mosley,* 423 U.S. at 107. In so holding, the Court focused on the following factors: (1) The original interrogation was promptly terminated. (2) The interrogation was resumed only after the passage of a significant period of time. (In *Mosley* it was two hours). (3) The suspect was given complete *Miranda* warnings at the outset of the second interrogation. (4) A different officer resumed the questioning. (5) The second interrogation was limited to a crime that was not the subject of the earlier interrogation. *Wentela v. State,* 95 Wis. 2d 283, 294, 290 N.W.2d 313 (1980).[6]

The absence or presence, however, of the *Mosley* factors is not exclusively controlling and these factors

---

[6] Although *Wentela v. State,* 95 Wis. 2d 283, 295–299, 290 N.W.2d 313 (1980), deals with the issue of right to counsel, this court based its analysis of that case on the *Mosley* factors.

do not establish a test which can be "woodenly" applied. *Wentela*, 95 Wis. 2d at 299. The essential issue is whether, under the circumstances, the defendant's right to silence was scrupulously honored. The *Mosley* factors provide a framework of analysis to aid in determining that issue. When that framework is applied in this case, it is apparent that the defendant's right to silence was not scrupulously honored.

First, the defendant did not have the benefit of having a different officer resume the questioning. Officer McClain first questioned the defendant at the Brodhead Police Station. The defendant told Officer McClain that he wished to remain silent. Approximately one-half hour later and while Officer McClain was present, Investigator Argue again questioned the defendant. While this is arguably a technical compliance with the fourth *Mosley* factor, the defendant receives little assurance that his invoked right to silence will be honored when the officer who had just questioned him and who was informed of the defendant's desire to remain silent is present as another officer again questions the defendant.

In any event, this fourth *Mosley* factor was not present at the time the defendant confessed. Argue questioned the defendant at the Brodhead station and the defendant remained mute. Argue then questioned the defendant for the second consecutive time at the Green County Sheriff's Department. It was during this second questioning by Argue that the defendant gave the statement incriminating himself.

Second, a significant period of time did not pass between the time the defendant first invoked his right to silence and the time questioning was resumed. What constitutes a "significant" period must be interpreted in light of the circumstances of the case and in light of the goals to dispel the compulsion inherent in custodial surroundings and to assure the defendant that

his right to silence will be scrupulously honored. Under the circumstances in this case, the passage of time prior to resuming questioning was not significant because it did not, in any meaningful way, promote these underlying goals.

When the defendant first invoked his right to silence at the Brodhead Police Station in response to Officer McClain's inquiry, Officer McClain discontinued the questioning. Almost immediately thereafter, however, Officer McClain placed a tape recorder in front of the defendant, turned it on and told the defendant that this recorder would record anything the defendant said. When this fact is combined with Investigator Argue's resuming the interrogation little more than one-half hour later, it is apparent that little was done by means of interrupting the interrogation to assure the defendant that his invoked right to silence would be scrupulously honored. On the contrary, placing the tape recorder in front of the defendant and continuing the questioning after only a brief interruption would tend to have the coercive effect of letting the defendant know that it was expected he would make a statement.

When asked again, after the half hour interruption, whether he wished to make a statement, the defendant said no, according to Officer McClain, and "I don't know what good that will do" according to Investigator Argue. In light of his previous invocation of his right to silence and in light of his subsequently remaining mute, either answer said to have been given by the defendant must be interpreted as another invocation of the right to silence. Approximately ninety minutes then passed before Investigator Argue again advised the defendant of his *Miranda* rights and then took his statement. That ninety minute period was not significant in light of the compulsive nature of the earlier questioning and the defendant's reinvocation of this right to silence.

Finally, each time the police sought to question the defendant it was about the particular criminal incident of sexual assault for which he was arrested. The Court in *Mosley* assigned considerable weight to the fact that the second interrogation was limited to a crime that was not the subject matter of the earlier interrogation. *Wentela,* 95 Wis. 2d at 297–298. As one writer has said concerning this factor in *Mosley:*

"[T]he fact seems critical, for in its absence one is left only with a renewed effort to question by a different member of the same police force, in a different room in the same building, only two hours after Mosley's assertion of his right not to be questioned." Stone, *The Miranda Doctrine in the Burger Court,* 1977 Sup. Ct. Rev. 99, 134.

A review of the circumstances with the aid of the *Mosley* factors leads to the conclusion that the defendant's right to silence was not scrupulously honored. Repetition of the *Miranda* warnings did not dispel the coercive effect of the state's method of interrogating the defendant. We conclude that although the defendant signed a form waiving his *Miranda* rights, the waiver of his right to silence was tainted by the earlier violation of that same right and was not "voluntarily, knowingly and intelligently" made. *Miranda,* 384 U.S. at 444. We conclude that the statements which the defendant made after he first invoked his right to silence should have been suppressed as evidence.

### (2) *RIGHT TO COUNSEL.*

The defendant also claims that the inquiry he made to Officer McClain prior to being informed of his *Miranda* rights constituted an invocation of his right to counsel.

We have held that the defendant's right to remain silent was violated requiring suppression of his incriminating statements. Because there is no claim that the defendant made any statement between the time he inquired about his right to counsel and the time he first invoked his right to silence, we need not reach the issue of whether the defendant's inquiry constituted an invocation of his right to counsel.

*By the Court.*—The decision of the court of appeals which affirmed the judgment of conviction is reversed and the cause remanded for a new trial.