State of Wisconsin, Plaintiff-Respondent,
v.
Harold G. Curlee, Defendant-Appellant.
No. 03-3496-CR.
Court of Appeals of Wisconsin.
Opinion Filed: December 28, 2004.
Before Wedemeyer, P.J., Fine and Curley, JJ.
¶ 1 FINE, J.
Harold G. Curlee appeals from a judgment entered after he pled guilty to three counts of armed robbery with the threat of force, one count as a party to a crime. See WIS. STAT . §§ 943.32(2), 939.05. He alleges that the trial court erroneously denied his motion to suppress his confession, and claims: (1) that the police violated his right to remain silent, and, apparently, (2) that his confession was involuntary. We affirm.

I.
¶ 2 Harold G. Curlee was arrested on January 15, 2003, for robbing a SuperCuts Hair Salon in Milwaukee, and fourteen baggies of marijuana were found in his sock. Curlee was detained on a parole hold, and, while he was in custody on the parole hold, the police interviewe d him four times over six days. During the first two interviews, Curlee admitted to the marijuana possession, but did not talk about the robbery.
¶ 3 Five days after the first two interviews, the police had a line-up, and two of the robbery victims identified Curlee. Based on this new information, the police interviewed Curlee a third time, but he still did not talk about the robbery. After this third interview, Dennis Pierce told the police that he and Curlee committed the SuperCuts robbery, and Curlee was charged with two more armed robberies. As a result of the Pierce confession implicating Curlee, the police spoke to Curlee a fourth time. During this fourth interview, Curlee confessed to robbing SuperCuts and two other hair salons.
¶ 4 Curlee sought to suppress his confession. He claimed that "[t]he repeated re-questioning in combination with pressure tactics" violated his right to remain silent. See Miranda v. Arizona, 384 U.S. 436, 473-474 (1966). He did not assert in his suppression motion before the trial court that his confession was "involuntary" in the sense that this term of art is used. See State v. Clappes, 136 Wis. 2d 222, 236, 401 N.W.2d 759, 766 (1987).
¶ 5 Detective Erik Gulbrandson spoke to Curlee the first time, on January 16, 2003. At a hearing on Curlee's suppression motion, see State ex rel. Goodchild v. Burke, 27 Wis. 2d 244, 133 N.W.2d 753 (1965), Gulbrandson testified that he interviewed Curlee between 1:35 a.m. and 4:30 a.m. and read Curlee's Miranda rights to him at the beginning of the interview. According to Gulbrandson, Curlee said that he understood those rights and wanted to talk. Gulbrandson asked Curlee about the marijuana and the robbery. According to Gulbrandson, Curlee talked about the marijuana, but avoided questions about the robbery. Gulbrandson claimed that he ended the interview when, during the third hour of questioning, Curlee explicitly told him that he did not want to talk about the robbery.
¶ 6 Detective Jeffrey Wiesmueller conducted the second interview. Wiesmueller testified that the interview started on January 16, 2003, at 11:00 a.m. Wiesmueller testified that he read Curlee's Miranda rights to him and that Curlee waived those rights. Wiesmueller told the trial court that, during the interview, Curlee did not deny that he committed the robbery but would not go into any detail about it. Wiesmueller testified that he ended the interview approximately one hour later because he felt that it would be futile to continue.
¶ 7 Detective Daniel Teske conducted the third interview on January 21, 2003, after the two victims had picked Curlee out of the line-up. The interview started at 3:45 p.m. and lasted until 4:30 p.m. Teske testified that he read Curlee's Miranda rights to him and Curlee told him that he understood them. Teske then explained to Curlee that he had been identified in a line-up and asked Curlee if he wanted to explain. According to Teske, Curlee talked about the marijuana, but did not talk about the robberies. Teske claimed that he ended the interview when it became clear that Curlee was not going to answer any questions about the robberies.
¶ 8 Detectives Peter Panasiuk and Wiesmueller conducted the fourth interview on January 22, 2003, which was after Pierce implicated Curlee in the SuperCuts robbery. According to Panasiuk, Curlee told them that they did not have to read his Miranda rights to him again because he had already heard them several times. The trial court specifically found that Curlee told the officers that "he didn't want to hear it again and waived it." Panasiuk testified that, during this fourth interview, they reviewed the evidence with Curlee, including Pierce's statement. Curlee then confessed to the SuperCuts robbery and to robbing two other hair salons.
¶ 9 Curlee also testified at the suppression hearing. He claimed that he told Gulbrandson at least five times during the first interview that he did not want to talk about the robbery, but that Gulbrandson "continued to badger" him. He further testified that during the second, third, and fourth interviews he told the detectives that he was not going to answer any questions about the robbery, but that they continued to ask him questions nevertheless. Curlee claimed that he confessed during the fourth interview because he "felt [the detectives] weren't going to give up until I gave some kind of statement."
¶ 10 The trial court concluded that the police "scrupulously honored" Curlee's right to remain silent, and denied the motion to suppress his confession. The trial court also concluded that Curlee's right to an attorney, see Edwards v. Arizona, 451 U.S. 477, 484-485 (1981), was not violated. Curlee does not challenge this latter ruling on appeal.

II.
¶ 11 We review the trial court's decision on Curlee's motion to suppress his confession under a mixed standard of review. See State v. Turner, 136 Wis. 2d 333, 343-344, 401 N.W.2d 827, 832-833 (1987). We will sustain a trial court's findings of historical or evidentiary fact unless they are clearly erroneous, but we independently consider whether those facts show a constitutional violation. See ibid.
¶ 12 Police may re-interrogate a suspect after he or she has invoked the right to remain silent if, despite the further questioning, the police have "scrupulously honored" that right. Michigan v. Mosley, 423 U.S. 96, 103-104 (1975). Mosley outlines five factors we use in analyzing this issue: (1) whether the police promptly terminated the original interrogation; (2) whether they resumed questioning only after significant time has passed; (3) whether they gave fresh Miranda warnings at the outset of the new interrogation; (4) whether a different officer conducted the new interrogation; and (5) whether the new questioning concerned a crime that was not the subject of the initial interrogation. Mosley, 423 U.S. at 104-106; see also State v. Hartwig, 123 Wis. 2d 278, 284, 366 N.W.2d 866, 869 (1985) (adopting Mosley factors).
¶ 13 "The absence or presence, however, of the Mosley factors is not exclusively controlling and these factors do not establish a test which can be `woodenly' applied." Hartwig, 123 Wis. 2d at 284-285, 366 N.W.2d at 870. Rather, Mosley provides a framework for determining whether the defendant's right to remain silent was "scrupulously honored." Hartwig, 123 Wis. 2d at 285, 366 N.W.2d at 870. The trial court recognized all of this in its oral decision, and, applying the Mosley framework to the facts of this case, we agree with the trial court that Curlee's right to remain silent was "scrupulously honored."
¶ 14 Analyzing the interviews under the five Mosley factors, the trial court made the following findings and conclusions. First, it found that the original interview was not promptly terminated. It reasoned that three hours was "a bit long," but noted correctly that this factor was not dispositive. Second, it found that the subsequent interviews were resumed after significant intervening periods of time: five hours between the first and second interviews, five days between the second and third interviews, and almost twenty-four hours between the third and fourth interviews. Third, it found that the detectives gave Curlee his Miranda warnings at the beginning of every interview, with the exception of the fourth interview, when, as we have seen, Curlee told the detectives that he did not want to hear them again. The trial court further found that Curlee waived his Miranda rights each time. Fourth, although the trial court found "somewhat bothersome" Wiesmueller's involvement in the second and fourth interviews, it noted that Wiesmueller was present at the fourth interview because the police had new information. Finally, it found that any problems that might have flowed from the detectives discussing the robbery with Curlee during all four interviews, was mitigated because the initial interview also dealt with the marijuana crime, and the detectives had new information from the lineup and Pierce's confession during the third and fourth interviews.
¶ 15 By determining that the police "scrupulously honored" Curlee's right to remain silent, the trial court implicitly found credible the detectives' testimony that they stopped the interviews when Curlee told them that he did not want to discuss the SuperCuts robbery, as well as when and how they resumed their questioning of him. When the trial court is the finder of fact, it is the sole assessor of a witness's credibility. See Estate of Dejmal v. Merta, 95 Wis. 2d 141, 151-152, 289 N.W.2d 813, 818 (1980). Based on the trial court's findings of fact, we agree with its legal conclusion that under Mosley the detectives' four interviews with Curlee did not violate Curlee's Miranda rights. The detectives had ample authority under the Mosley criteria to talk to Curlee about new evidence implicating him in the SuperCuts robbery even though he had previously said that he did not want to talk about it.
¶ 16 Curlee also seems to claim on appeal that the trial court should have suppressed his confession because it was involuntary. Insofar as this implicates anything other then whether the detectives honored his rights under Miranda, Curlee did not raise this issue before the trial court, and the trial court did not make any factual findings on it. See Clappes, 136 Wis. 2d at 236, 401 N.W.2d at 766 (A defendant's claim that his or her confession was involuntary requires a court to look at both the defendant's response as well as the alleged police misconduct, and to "balance the personal characteristics of the defendant against the pressures imposed upon him by police in order to induce him to respond to the questioning."). Therefore, we decline to address this issue. See State v. Caban, 210 Wis. 2d 597, 604-605, 563 N.W.2d 501, 505 (1997) ("[E]ven the claim of a constitutional right will be deemed waived unless timely raised in the circuit court."); Wurtz v. Fleischman, 97 Wis. 2d 100, 107 n.3, 293 N.W.2d 155, 159 n.3 (1980) (court of appeals may not find facts).
By the Court.  Judgment affirmed.