COURT OF APPEALS
DECISION
DATED AND FILED

May 31, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP969-CR**

Cir. Ct. No. 2020CF2656

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

---

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

  V.

JEROME TILLMON,

    DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Milwaukee County: DAVID L. BOROWSKI, Judge. *Affirmed*.

Before Brash, C.J., Donald, P.J., and Dugan, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.   Jerome Tillmon appeals the judgment entered on his guilty plea to second-degree reckless homicide as a party to a crime.  His sole claim on appeal is that the circuit court erred when it denied his suppression motion.  *See* WIS. STAT. § 971.31(10) (2021-22).[1]  We disagree and affirm the judgment.

## I. BACKGROUND

¶2     The State charged Tillmon with felony murder stemming from an armed robbery as a party to the crime.  The complaint alleged that Tillmon, known as "Rome," arranged to meet with D.M.A. to pay back a debt.  While Rome and D.M.A. were outside D.M.A.'s girlfriend's residence, the girlfriend told police that she heard several gunshots.  She then found D.M.A. outside and saw that he had been shot.  Phone records and text messages implicated Tillmon in the meeting that took place prior to the homicide; however, there were no witnesses to the shooting.

¶3     The complaint additionally alleged that L.S. told police that Tillmon confessed to her that he had robbed and killed D.M.A.  The complaint then detailed Tillmon's own statement regarding the incident, where he explained that he owed D.M.A. $25 worth of marijuana.  Tillmon stated that his friend picked him up, along with another unknown individual, and Tillmon's friend wanted to rob D.M.A.  Ultimately, Tillmon contacted D.M.A., who came outside.  Tillmon told D.M.A. he would pay him the following day.  Then Tillmon and the unknown individual started to drive away.  Meanwhile, Tillmon's friend came from the side of the residence, and Tillmon heard gunshots.  Tillmon and the unknown individual picked up Tillmon's friend, who had D.M.A.'s gun and drove away.

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

¶4      Tillmon subsequently sought to suppress inculpatory statements he made to police on August 2 and 3, 2020, along with all evidence derived from those statements. He argued that law enforcement did not honor his request to terminate his interrogation when detectives interrogated him a second time the following day. Tillmon also argued that the tactics employed during the interrogations made his statements involuntary.[2]

¶5      After listening to the testimony provided by three detectives and Tillmon, along with viewing the video of the interrogations, the circuit court denied the motion. Specifically, the circuit court found that "[t]here was nothing coercive about the officers['] behavior. There was nothing illegal about the officer[s'] behavior. He was clearly read his *Miranda* warnings." The court also found that there was no evidence supporting Tillmon's testimony that he was under the influence of Percocet during the interrogations. The circuit court found: "[Tillmon] lied. He was not under the influence of anything[.]" The circuit court also concluded that there was no violation of Tillmon's right to remain silent based on the second interrogation.

¶6      The case proceeded to a jury trial. On the third day, Tillmon decided to plead guilty to an amended charge of second-degree reckless homicide as a party to a crime. The circuit court accepted his plea and sentenced him to twelve years of initial confinement and eight years of extended supervision.

---

[2] Tillmon additionally argued that detectives did not read him his *Miranda* warnings early enough during the interrogations; however, he abandons this argument on appeal. *See Miranda v. Arizona*, 384 U.S. 436 (1966).

## II. DISCUSSION

¶7    On appeal Tillmon challenges the denial of his suppression motion. He argues that his statements should have been suppressed because his right to remain silent was not scrupulously honored as required under ***Michigan v. Mosley***, 423 U.S. 96 (1975).  He also argues that his statements were not voluntary.  We address each claim in turn.

### A. *Tillmon's right to silence was scrupulously honored.*

¶8    The Wisconsin Supreme Court, applying ***Mosley***, has explained that "[t]he critical safeguard of the right to silence is the right to terminate questioning by invocation of the right to silence.  The [S]tate may again interrogate the accused after the right to silence has been invoked provided that right to silence is 'scrupulously honored.'" ***State v. Hartwig***, 123 Wis. 2d 278, 284, 366 N.W.2d 866 (1985) (citations omitted).  This determination—whether the right to silence was scrupulously honored—calls for the application of constitutional principles to the facts of the case and is subject to this court's *de novo* review.  *See **id.***  Meanwhile, this court "review[s] a circuit court's findings of historical fact under a clearly erroneous standard[.]" ***State v. Rejholec***, 2021 WI App 45, ¶16, 398 Wis. 2d 729, 963 N.W.2d 121.

¶9    ***Mosley*** outlines a five-factor framework to consider in analyzing whether a defendant's invocation of his right to silence was scrupulously honored: (1) whether the original interrogation was promptly terminated when the defendant invoked his right to silence; (2) whether the interrogation was resumed only after the passage of a significant period of time; (3) whether the suspect was given complete ***Miranda*** warnings at the outset of the second interrogation; (4) whether a different officer resumed the questioning; and (5) whether the second interrogation

was limited to a crime that was not the subject of the earlier interrogation. *See Hartwig*, 123 Wis. 2d at 284. However, these factors do not establish a test which can be woodenly applied, and the presence or absence of the factors is not exclusively controlling. *State v. Badker*, 2001 WI App 27, ¶12, 240 Wis. 2d 460, 623 N.W.2d 142.

¶10 Tillmon contends that several *Mosley* factors were ignored by the circuit court. He appears to challenge the second, fourth, and fifth factors, and we limit our discussion accordingly. As to the second factor—whether a significant period of time passed before the second interview—he takes issue with being re-interrogated after a twenty-four-hour period had passed and suggests that the circumstances of his case were such that this was inadequate. As to the fourth and fifth *Mosley* factors—whether a different officer conducted the second interrogation and whether the subject-matter of the second interrogation was limited to a different crime than the first—he points out that Detective Rosemarie Galindo was present during both the first and the second interrogations. He additionally asserts that Detective Galindo took control of the second interview, which "primarily rehashed the same questioning conducted in the first interview with the exception of showing a couple of 'new' photographs to [Tillmon] for identification." According to Tillmon, the new information was known to the first detectives who interrogated him and could have been asked without the need for a second interrogation.

¶11 We first conclude that the "significant period of time" factor was satisfied given that the second interrogation took place twenty-four hours after the first interrogation ended, at which time the detectives administered a new set of *Miranda* warnings. *See State v. Turner*, 136 Wis. 2d 333, 359, 401 N.W.2d 827 (1987) (holding that a twenty-four-hour time gap satisfied the "significant period of time" *Mosley* factor); *see also Mosley*, 423 U.S. at 104 (upholding a two-hour gap

5

between interrogations). There is nothing about the circumstances presented that compels a different conclusion.

¶12 Next, Detective Galindo being present for and participating in the second interrogation did not violate Tillmon's right to remain silent. Detective Galindo testified that Detective Jeffrey Emanuelson took the lead in the first interrogation, asking the majority of the questions. Detective Emanuelson was not present at the second interrogation. Detective Galindo and Detective Jake Puschnig testified that Detective Puschnig initially took the lead in the second interrogation, and Detective Galindo took over only after Tillmon stated that he specifically wanted to talk to her.

¶13 While Detective Galindo was the only detective who partook in both interrogations, there is no evidence that she was present at the second interrogation in an attempt to wear down Tillmon's resistance. There is no evidence of police overbearing or coercive tactics here. The fact that Detective Galindo was involved in both interrogations is not outcome determinative. *See Turner*, 136 Wis. 2d at 360 ("It is not determinative, absent other evidence of police overbearing or coercive tactics, that all of the *Mosley* factors were not satisfied."). The fourth *Mosley* factor does not help Tillmon.

¶14 Tillmon's argument that the second interrogation was "[f]or the most part … unnecessary" and therefore in violation of *Mosley*'s fifth factor also fails. The State contends that "the constitutionality of a subsequent police interview depends not on its subject matter but rather on whether the police, in conducting the interview, sought to undermine the suspect's resolve to remain silent." *See United States v. Schwensow*, 151 F.3d 650, 659 (7th Cir. 1998). Here, the detectives testified that the purpose of the second interrogation was to question Tillmon on

information that Detective Puschnig, as the lead detective, had that the detectives the day before did not. While there was overlap in the conversation, Detective Puschnig also confronted Tillmon with those additional details during the second interrogation. Despite Tillmon's conclusory assertion that the second interrogation was an attempt to wear him down, there is no evidence in the record that the detectives sought to undermine Tillmon's resolve to remain silent. Consequently, we conclude that Tillmon's right to silence was scrupulously honored.

### B. *Tillmon's statements were voluntary.*

¶15 Tillmon next argues that suppression is warranted because his statements were involuntary. Acknowledging that he was neither physically assaulted nor threatened with physical harm during the two interrogations, he directs our attention to the second interview, during which he contends that the detectives repeatedly called him "a liar and foolish. He was told that his actions endangered the safety of his family." Tillmon asserts that he was also accused "of not caring for the victim's family and that his actions would cause his own family to be in danger." Tillmon contends that the interrogation "was so intense for the vulnerable Mr. Tillmon that he burst into tears and had to be comforted by a detective to ensure he would keep talking."

¶16 A defendant's statement is voluntary if it is "the product of a free and unconstrained will, reflecting deliberateness of choice, as opposed to the result of a conspicuously unequal confrontation in which the pressures brought to bear on the defendant by representatives of the State exceeded the defendant's ability to resist." *State v. Hoppe*, 2003 WI 43, ¶36, 261 Wis. 2d 294, 661 N.W.2d 407. If a statement made by a defendant to police was not voluntary, it is inadmissible to prove his or

her guilt, pursuant to the Due Process Clause. *State v. Deets*, 187 Wis. 2d 630, 635, 523 N.W.2d 180 (Ct. App. 1994).

¶17    "Coercive or improper police conduct is a necessary prerequisite for a finding of involuntariness." *Hoppe*, 261 Wis. 2d 294, ¶37. If the "analysis of the facts does not reveal coercion or improper police pressures, there is no need … to engage in the balancing test between the suspect's personal characteristics and those nonexistent pressures." *State v. Vice*, 2021 WI 63, ¶31, 397 Wis. 2d 682, 961 N.W.2d 1. Indeed, absent coercive or improper conduct, "it is improper to consider [Tillmon's] personal characteristics because consideration of [his] personal characteristics is triggered *only* if there exists coercive police conduct against which to balance them." *See State v. Markwardt*, 2007 WI App 242, ¶50, 306 Wis. 2d 420, 742 N.W.2d 546.

¶18    The detectives did not employ any coercive tactics. Tillmon's first interrogation from the point of the *Miranda* waiver to its termination was just under an hour and twenty minutes. The second interrogation was roughly two hours and ten minutes with an hour-and-a-half break in the middle. Tillmon was not handcuffed during the interrogations, and the detectives utilized the largest interview room in the Police Administration Building. They also provided Tillmon with breaks, cigarettes, and drinks. Detective Galindo provided Tillmon with her own personal sweatshirt when he said that he was cold. There is no indication in the record that the detectives were physically violent with him in any way.

¶19    Insofar as Tillmon contends that one of the detectives used a confrontational tone, that "is not improper police procedure and does not, by itself, establish police coercion." *See Markwardt*, 306 Wis. 2d 420, ¶42. We are likewise unconvinced by Tillmon's speculative argument that another detective tried to

coerce his cooperation by holding his hand during part of the interview and hugging him at the end. Given the absence of coercive conduct, there is no need to balance Tillmon's personal characteristics.

¶20 There is nothing in the record to support involuntariness. Consequently, we conclude that the circuit court properly denied Tillmon's motion to suppress.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.